487 N.W.2d 911 (1992)
In the Matter of the WELFARE OF T.L.K., Child.
No. C1-91-2500.
Court of Appeals of Minnesota.
August 4, 1992.
*912 John M. Stuart, State Public Defender, Charlann E. Winking, Sp. Asst. Public Defender, Minneapolis, for appellant T.L.K.
Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.
Considered and decided by FORSBERG, P.J., and HUSPENI and PETERSON, JJ.

OPINION
FORSBERG, Judge.
Appellant T.L.K., a juvenile, was convicted of one count of possession of a controlled substance (cocaine) in the fifth degree under Minn.Stat. § 152.025, subds. 2(1) and 3(a) (1990) and Minn.Stat. § 609.05 (1990). She appeals, claiming a defect in the search warrant under which the drugs were seized. We agree with appellant and reverse her conviction.

FACTS
During 1991, the St. Paul Police Department held meetings with Frog Town neighborhood residents to discuss community crime concerns. A number of houses in the area were named by residents as "crack houses." Among those most often mentioned was "586 Edmond Street."
Sergeant Timothy Leslie of the St. Paul Police Department contacted a confidential informant who was sent to that address to purchase cocaine. Standard police procedures were used and a drug buy was completed on October 16, 1991. The informant claimed he purchased the drugs at 586 Edmond from an individual named Choyce Young, who was known by the police due to his gang and criminal activities.
Later that day, Sergeant Leslie obtained a search warrant for the premises "586 Edmond," and the person of Choyce Dioni Young. Although 586 Edmond is a duplex with a unit upstairs and one downstairs, the unit to be searched was not identified.
On October 24, 1991, the search warrant was executed in the lower unit of 586 Edmond. There is no indication in the record whether the upper unit was searched. During the search, crack cocaine was found on a woman who was in the kitchen. A plastic bag containing crack cocaine also was found in a purple book bag hanging in a bedroom closet. Several papers belonging to appellant were found in the book bag. Appellant was not present when the search began, but came home while the search was in progress. She was searched, handcuffed and arrested. No drugs were found on her person.
Testimony at T.L.K.'s hearing before a juvenile court referee indicated appellant moved into the lower unit at 586 Edmond with her aunt approximately 12 days earlier, which would have been the 12th or 13th of October, 1991. The information on the warrant indicated the drug buy took place "within 72 hours" of October 16, 1991. Appellant's aunt testified that the previous tenant had to be forcibly evicted by the sheriffs.
Further testimony indicated there were two mail boxes on the front porch of the Edmond residence. There was a single entrance which opened into the lower unit, and a flight of stairs leading to the upper unit. To the best of the knowledge of the downstairs tenants, the building had always been a duplex.
Appellant's brother testified that he saw a friend of his put the cocaine in the book bag. Appellant's aunt testified appellant's brother put the cocaine into the book bag. There was no evidence whatsoever that the drugs belonged to Young, that Young lived in the apartment, or that Young was even known to appellant or any member of her family.

ISSUE
Was the search warrant, which failed to specify the apartment to be searched, so *913 lacking in particularity under these circumstances as to violate appellant's fourth amendment right to be free of unreasonable search and seizures?

ANALYSIS
Appellant claims her constitutional rights under the fourth amendment to the United States Constitution were violated by the issuance of the search warrant. The fourth amendment states in relevant part:
[n]o warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.
U.S. Const.Amend. IV.
The warrant in question here included no apartment or unit number, despite the fact that 586 Edmond is a duplex.
The general rule is that a search warrant for a "multiple occupancy building" is invalid unless it describes the particular unit to be searched with sufficient definiteness. 2 W. LaFave, Search and Seizure, § 4.5(b) (1978).
State v. Lorenz, 368 N.W.2d 284, 286 (Minn.1985). An exception to this rule is recognized "when police, acting reasonably, do not learn until executing the warrant that the building is a multiple occupancy building." Id. at 286 (emphasis added) (citing United States v. Santore, 290 F.2d 51 (2d Cir.1960)). The question before us is whether the police acted reasonably in their investigation to determine whether 586 Edmond was a multiple occupancy building.
In United States v. Andrews, 713 F.Supp. 1319 (D.Minn.1989), the court found a warrant lacked sufficient particularity under the following circumstances:
[F]rom the exterior the property resembled a single family dwelling with one mailbox, one visible main entrance, and one address. But other evidence clearly demonstrated that reasonable inquiry would have revealed the true nature of the dwelling. There were two voice boxes, under separate names, by the front door. Of particular interest is a letter addressed to Schubert found, prior to the search, in the trash behind the house. The letter bore Schubert's name; the address indicated "Flr 2."
The magistrate concluded that the deputy could have conducted further investigation to determine if more than one person occupied the house. The Court concurs. The dual voice boxes  which the Court notes are typical of a dwelling housing multiple tenants  indicated that the house may well have been divided into individual apartments. The letter to Schubert also forewarned of multiple tenants and separate living units. The Court finds the letter reasonably indicated Schubert occupied the upper floor of the two-story house. The deputies certainly could have spoken further with their informant to learn more about the house and the suspect they believed resided therein. There is no indication that an immediate search of the house was imperative. Although the house may have initially appeared to be a single family dwelling, reasonable investigation would have revealed the house consisted of at least two apartments.
Id. at 1320-21.
We conclude that the steps undertaken by the St. Paul Police in this case were even less reasonable than those taken by the officers in Andrews. No attempt was made to contact utility or telephone companies. Multiple mail boxes were present and observable from the street. Once inside the main door, access to the entire residence was available only through separate doors on separate floors. The police were under no pressing time constraints to execute the warrant and had ample time for further corroborative investigations. Under these circumstances, we believe the St. Paul Police failed to make reasonable efforts required by the United States Constitution.
In reaching our decision that the fourth amendment requires exclusion of *914 the seized evidence, we consider the specific policy purposes of the particularity requirement.
The main purpose of the requirement is "to minimize the risk that officers executing search warrants will by mistake search a place other than the place intended by the magistrate." 2 W. La Fave, Search and Seizure § 4.5 (1978). Not all errors in the search warrant's description of the premises to be searched will invalidate a search pursuant to the warrant. The test for determining the sufficiency of the description of the premises is whether the description is sufficient so that the executing officer can "locate and identify the premises with reasonable effort" with no "reasonable probability that [other premises] might be mistakenly searched." United States v. Gitcho, 601 F.2d 369, 371 (8th Cir.1979), cert. denied, 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979).
State v. Gonzales, 314 N.W.2d 825, 827 (Minn.1982).
In this case, there is every indication that, in fact, the wrong unit was searched. Young, the party named on the warrant, was not present at the time of the search. For that matter, there was no indication that Young was ever in the lower unit, certainly not while appellant's family were the occupants. Likewise, appellant was not present at the time of the search. The police had no prior indication from any source that appellant nor any other household member had any contact or involvement in drug trafficking at this or any other address. Under these circumstances, the drugs found in appellant's book bag were found more as a result of random luck than through indicia amounting to probable cause.
We therefore hold that the police either knew, or should have known, there were two separate dwelling units at the searched address. As such, appellant's living unit should have been excluded from the scope of the search warrant. See Maryland v. Garrison, 480 U.S. 79, 86-87, 107 S.Ct. 1013, 1017-18, 94 L.Ed.2d 72 (1987). The fruits of this search must therefore be suppressed. See Andrews, 713 F.Supp. at 1321. Absent the drugs confiscated in the search, there is no evidence against appellant upon which conviction may be based. We therefore reverse her conviction, and order judgment of acquittal.

DECISION
The warrant under which the drugs were seized was defective under the fourth amendment of the United States Constitution and the evidence seized thereunder must be suppressed. Appellant's conviction is therefore reversed.
Reversed.